UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

LINDA KUNZE,

    Plaintiff,

-VS-

CREDIT ACCEPTANCE CORPORATION,

    Defendant.

                                     /

CASE NO: 17cv4060-LTS

## COMPLAINT

1.     Plaintiff alleges violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA").

## INTRODUCTION

2.     The TCPA was enacted to prevent companies like CREDIT ACCEPTANCE CORPORATION, ("Credit Acceptance"), from invading American citizens' privacy and prevent abusive "robo-calls."

3.     "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, –US--, 132 S.Ct. 740, 745, 181 L.Ed.2d 881 (2012).

4.     "No one can deny the legitimacy of the state's goal: Preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious. Most members of the public want to limit calls, especially cellphone calls, to family and acquaintances, and to get their

1

political information (not to mention their advertisements) [*6] in other ways." *Patriotic Veterans v. Zoeller*, No. 16-2059, 2017 U.S. App. LEXIS 47, at *5-6 (7th Cir. Jan 3, 2017).

5. "Senator Hollings, the TCPA's sponsor, described these calls as 'the *1256 scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

6. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal.

## JURISDICTION AND VENUE

7. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

8. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

9. The alleged violations described herein occurred in Plymouth County, Iowa. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

10. Plaintiff is a natural person, and citizen of the State of Iowa, residing in Sioux City, Plymouth County, Iowa.

11. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

12. Defendant is a Corporation with its principal place of business at 25505 West 12 Mile Road, Southfield, MI 48034, and conducting business in the State of Iowa through its Registered Agent, Corporation Service Company, 505 5th Avenue, Suite 729, Des Moines, IA 50309.

13. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (712) *** - 6832, and was the called party and recipient of Defendant's hereinafter described calls.

14. In or about February of 2015, Plaintiff began receiving calls to her aforementioned cellular telephone from Defendant seeking to recover an alleged debt.

15. Upon receipt of the calls from Defendant, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following phone numbers: (586) 461-4324, and (517) 861-2084, and when those numbers are called, a pre-recorded message answers "Thank you for calling Credit Acceptance. If you are a dealer or financial institution, please press one,

3

otherwise, please press two. Para continuar en Español, presione uno. As a commitment to customer service, this call may be monitored or recorded. Please enter your account number or social security number, and then press pound."

16. Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that she knew it was an autodialer because of the vast number of calls she received, and because when she answered a call from the Defendant she would hear a pre-recorded message stating the call was from Credit Acceptance, and to please hold the line for the next available representative.

17. Furthermore, some or all of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

18. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

19. Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

20. In or about January of 2016, Plaintiff returned the Defendant's call at the number provided, met with an automated message eventually was connected to a live representative, and informed that agent/representative of Defendant that she submits her automobile payment on the

4

Case 5:17-cv-04060-LTS-CJW   Document 2   Filed 09/26/17   Page 4 of 9

third of each month, that she was not late on her payment, and demanded that the Defendant cease placing calls to her aforementioned cellular telephone number.

21. During the aforementioned phone conversation in or about January of 2016 with Defendant's agent/representative, Plaintiff unequivocally revoked any express consent Defendant may have had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

22. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

23. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

24. Additionally, in or about August of 2016, Plaintiff received a call from the Defendant, was eventually connected to a live agent/representative of Defendant, explained to the agent/representative that she would be making a payment, demanded that Defendant stop calling her cell phone, and was met with a response from the agent/representative that the collection calls would continue.

25. Further, on or about January 3, 2017, due to continued automated calls to her aforementioned cellular telephone number from the Defendant, Plaintiff again received a call from Defendant, met with an automated message, was eventually connected to a live agent/representative of Defendant and informed the agent/representative of Defendant that she would call after her March payment to make any future payment arrangement, and again demanded that Defendant cease placing calls to her aforementioned cellular telephone number.

26. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiff despite the Plaintiff revoking any express consent the Defendant may have had to call her aforementioned cellular telephone number.

27. On at least five (5) separate occasions, Plaintiff has either answered a call from Defendant or returned a call to Defendant regarding her account, held the line to be connected to a live representative, and demanded that Defendant cease placing calls to her aforementioned cellular telephone number. Her principal reason for answering these calls and making these demands of Credit Acceptance was the cumulative injury and annoyance she suffered from the calls placed by Credit Acceptance. These injuries are further described in paragraphs 30 through 36 herein.

28. Each of the Plaintiff's requests for the harassment to end was ignored.

29. From about January of 2016 through the filing of this Complaint, Defendant has placed approximately three-hundred (300) actionable calls to Plaintiff's aforementioned cellular telephone number. The exact number of calls will be established after a thorough review of Defendant's records.

30. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

31. From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of her cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's calls.

32. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. Plaintiff had to waste time to deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

33. Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go through the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

34. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

35. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services.

36. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way by stress, anxiety, and aggravation.

37. Defendant's corporate policy is structured so as to continue to call individuals like the Plaintiff, despite these individuals explaining to Defendant they do not wish to be called.

38. Defendant's corporate policy provided no means for Plaintiff to have Plaintiff's number removed from Defendant's call list.

39. Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

40. Defendant has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

41. Defendant has had numerous complaints against it from consumers across the country asking to not be called; however, Defendant continues to call these individuals.

42. Defendant violated the TCPA with respect to the Plaintiff.

43. Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### (Violation of the TCPA)

44. Plaintiff realleges and incorporates paragraphs one (1) through forty-three (43) above as if fully set forth herein.

45. Defendant willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Plaintiff did not wish to receive any telephone communication from Defendant, and demanded for the calls to stop.

46. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

8

Case 5:17-cv-04060-LTS-CJW   Document 2   Filed 09/26/17   Page 8 of 9

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, treble damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

Respectfully Submitted,

*/s/ Theresa C. Davis*

THERESA C. DAVIS
#AT0001920
for
SHUTTLEWORTH & INGERSOLL, P.L.C.
115 Third Street, S.E., P.O. Box 2107
Cedar Rapids, IA 52406-2107
Telephone: 319-365-9461
Facsimile: 319-365-8443
tcd@shuttleworthlaw.com
ATTORNEYS FOR PLAINTIFF

Pro Hac Vice admission to be applied for:

*/s/ Shaughn C. Hill*

Shaughn C. Hill, Esquire
Morgan & Morgan, Tampa, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Shill@ForThePeople.com
JSherwood@ForThePeople.com
*Attorney for Plaintiff*